IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEONTAE LATHAM,<br><br>    Plaintiff,<br><br>v.<br><br>KEVIN REICHERT, ANTHONY WILLS,<br>ANTHONY JONES, LT. WALKER,<br>SGT. JACKSON, LT. DYE,<br>C/O R. GEARHART, C/O COLLINS,<br>JOHN DOE #'s 1-5,<br><br>    Defendants. | 25-93-DWD<br><br>Case No. 24-cv-2391-NJR |

## MEMORANDUM AND ORDER

**ROSENTENGEL, Chief Judge:**

    Plaintiff Deontae Latham, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Latham alleges that his due process rights were violated during a disciplinary hearing, he experienced unconstitutional conditions of confinement, and he was subjected to excessive force.

    This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

1

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Latham alleges that his due process rights were violated in connection with a disciplinary ticket he received for drugs. On April 20, 2024, Latham resided in East Cellhouse, Cell 601 (Doc. 1, p. 11). A line (several pieces of ripped sheets connected together and used to pass items traded or trafficked between inmates) passed in front of Latham's cell, and he grabbed the line in order to prevent it from endangering a correctional officer (*Id*. at p. 11-12). He was in possession of the line that held the item when Correction Officer Eggers found and confiscated the line from him (*Id*. at p. 12). The item attached to the line was later determined to be synthetic cannabinoids (*Id*. at p. 13).

On June 27, 2024, C/O R. Gearhart issued Latham a disciplinary report for possessing drugs and contraband (Doc. 1, p. 14). In July, Latham went before the Adjustment Committee consisting of Sergeant Anthony Jones, Sergeant Jackson, Lieutenant Walker, and Lieutenant Dye (*Id*.). Latham argued that he was not guilty because he never possessed the items that were recovered (*Id*.). Latham argued the video evidence and Eggers's testimony would show that he never was in possession of the drugs (*Id*.). The Adjustment Committee ultimately found Latham guilty of the charges, and he received six months in segregation (*Id*.).

Latham alleges that the guilty finding violated his due process and equal protection rights, as well as Illinois Departmental Rules and Directives (*Id*. at pp. 15, 19-20). Latham alleges that Gearhart improperly wrote him up on charges that he did not

violate (*Id*. at p. 16). Latham further argues that the Adjustment Committee members violated his rights when they found him guilty of charges that he clearly did not violate (*Id*.). Latham further argues that Anthony Wills violated his rights when he failed to remedy the conviction and Defendants' actions in response to a grievance (*Id*. at pp. 17-18).

While in segregation, Latham lacked access to recreation, was limited to one phone call a month, and had limited showers (*Id*. at p. 22). He was also placed in the East Cellhouse which lacks adequate living conditions and is dangerous (*Id*.). Latham has been housed in North 2 Segregation Unit since June 27, 2024 (*Id*. at p. 25). Latham alleges that he has failed to receive the conditions and standards that IDOC's own administrative directives label mandatory for inmates in segregation (*Id*. at p. 26). Latham points to the Restrictive Housing Conditions of Confinement Standards which requires a bed for each inmate, clean bedding, running water and toilet, and adequate lighting (Doc. 1-1, pp. 37-38). The standards also require a shower no less than three times per week, state issue toiletries, a weekly exchange of clothes, and medications and ADA accommodations (*Id*.). Latham filed grievances about his conditions, including his access to recreation, showers, lack of access to sanitation and cleaning supplies, and exposure to hazardous conditions (Doc. 1, pp. 27-28). Hazards he faced included floods of feces, urine, waste, and food entering his cell (*Id*. at p. 28, 37). Mentally ill inmates threw urine on Latham, banged on the walls all night, screamed obscenities, and set fires in the unit (*Id*. at p. 28). Despite his grievances, the conditions did not improve (*Id*. at p. 27-29). Latham also failed to receive

the required mental health evaluations and treatment while in segregation (*Id*. at pp. 34, 37).

Latham alleges that the grievance process is inadequate. He further alleges that Wardens Anthony Wills and Kevin Reichert signed the grievances (*Id*. at p. 30) and contends their signatures make them liable for his conditions. He also alleges that he marked the grievances as emergencies, but they denied the grievances as emergency and ultimately signed off on the denials (*Id*. at pp. 31, 39). Latham also alleges that other inmates complained about the conditions and filed lawsuits, placing Wills and Reichert on notice regarding the conditions in North 2 (*Id*. at p. 32).

Latham also alleges that he was subjected to excessive force by Correctional Officer Collins and John Doe #'s 1-5 (Doc. 1, pp. 40-41). On September 24, 2023, Latham was accused of sexual misconduct and ordered to submit himself for cuffing (*Id*. at p. 41). Latham maintains that he immediately complied with the order, but he did ask Correctional Officer Edwards why he was being cuffed (*Id*. at pp. 41-42). Edwards indicated that Latham had exposed himself to the nurses (*Id*. at p. 42). Latham denied the allegations and yelled up to an inmate on the second floor, informing the inmate that he was being accused of an action that he did not commit (*Id*.).

Upon arriving in the segregation unit, Collins and John Doe #'s 1-5 were waiting for him. John Doe #1 informed Latham that he picked the wrong night to expose himself and that they were going to beat him (*Id*. at p. 42). The correctional officer then hit and kicked Latham and pulled on his hair (*Id*. at pp. 43-45). The allegations against Lathan were later dropped after the Adjustment Committee determined that Latham was not the

inmate who had exposed himself to the nurses (*Id*. at p. 45). Latham alleges that he filed a grievance after the event, but his grievances were lost or mishandled. He notes that Anthony Wills and Kevin Reichert signed off on grievances regarding his misplaced property and excessive force (*Id*. at p. 47). After submitting grievances about the assault, Latham alleges that the warden's staff has shown bias towards him (*Id*. at p. 53). He notes that the drug charge was brought against him after he grieved the excessive force (*Id*.). He alleges that Wills and Reichert have failed to investigate or remedy the retaliation that he has experienced and failed to stop staff from retaliating against him (*Id*. at p. 56).

## Preliminary Dismissals

To the extent that Latham alleges that in addition to the constitutional violations, Defendants also violated codes, administrative directives, and regulations, Latham fails to state a claim. The violation of prison policies, administrative directives, or even a state law, is not sufficient to state a Section 1983 claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, prison regulations, or policies).

Latham also fails to state a claim under the Fourteenth Amendment for violation of his equal protection rights. Latham merely states in conclusory fashion that his equal protection rights were violated. Without more, his mere conclusory statements do not state a claim. Any potential claims for violations of Latham's equal protection rights are **DISMISSED without prejudice**.

Latham also fails to state a viable retaliation claim against Wills and Reichert. Although Latham alleges that the two wardens failed to remedy the actions of their staff

5

who he believes retaliated against him, wardens cannot be liable simply in their positions as supervisors because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008); *Burks v. Raemisch*, 555 F.3d 592, 593-4 (7th Cir. 2009). Thus, Latham fails to allege a retaliation claim based on Wills and Reichert's failure to control or punish their staff. Any retaliation claim is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Fourteenth Amendment due process claim against Anthony Wills, Kevin Reichert, Correctional Officer R. Gearhart, Sergeant Anthony Jones, Sergeant Jackson, Lieutenant Walker, and Lieutenant Dye for finding Latham guilty of drug charges.
>
> **Count 2:** Eighth Amendment conditions of confinement claim against Anthony Wills and Kevin Reichert for failing to remedy the conditions in segregation.
>
> **Count 3:** Eighth Amendment excessive force claim against Collins and John Doe #'s 1-5 for their use of force against Latham in September 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[1]

**Count 1**

At this stage, Latham fails to state a claim in Count 1 for due process violations. Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the Adjustment Committee must be supported by "some evidence." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

Latham alleges that he clearly did not commit the violations he was charged with, and the charges were "trumped up." He also alleges that Defendants failed to substantiate the charges. But Latham fails to allege that he was denied a protected safe guard during the disciplinary hearing. He notes that he received the disciplinary charges, appeared before the committee, and presented his evidence. There are no allegations to suggest that the committee members were not impartial or that he was denied the ability to present evidence. The final summary report notes that Latham did not request

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

witnesses (Doc. 1, p. 65). Further, the findings appear to be supported by some evidence. The summary report notes that the video footage verified the allegations and Latham had a history of the same citation in the past (*Id.* at p. 65). Thus, Latham received due process protections, and there are no allegations to suggest a violation by Defendants.

Further, to the extent that Latham alleges that Wills and Reichert are liable for the due process violations because they denied his grievances, Latham fails to state a claim. The mere processing or mishandling of a grievance by those who did not participate in the underlying harm does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (prison grievance procedures are not mandated by the First Amendment, and the alleged mishandling of grievances by persons who did not otherwise cause or participate in the underlying conduct states no claim). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, Count 1 is **DISMISSED without prejudice**.

**Count 2**

Latham does, however, state a claim against Wills and Reichert regarding the conditions he experienced in segregation. Latham alleges that Wills and Reichert responded to his grievances but were also aware of the conditions in segregation due to numerous complaints from inmates as well as numerous lawsuits filed about the conditions in North 2. At this stage, Latham has adequately alleged that Wills and Reichert were aware of the conditions he faced in North 2 but failed to remedy the

unconstitutional conditions in the unit. Thus, Count 2 shall proceed against Wills and Reichert.

**Count 3**

The claims in Count 3 are unrelated to the claims in Counts 1 and 2. While Counts 1 and 2 involve discipline that Latham received for a drug charge in 2024 and the conditions he experienced in segregation, the allegations in Count 3 involve a claim of excessive force which occurred in 2023. The individuals involved in that use of force were not involved in the allegations in Counts 1 and 2.[2] Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Count 3 into a separate case and will open a new case with a new case number.

## Disposition

For the reasons stated above, Count 3 against Correctional Officer Collins and John Doe #'s 1-5 is **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order; and
- The Complaint (Doc 1).

---

[2] Although Latham alleges that Wills and Reichart denied grievances about the use of force, there are no allegations to suggest that they participated in the use of force or were aware of the use of force prior to the incident and failed to protect Latham. Thus, any claim against Wills and Reichart as to Count 3 is **DISMISSED without prejudice**.

As to the remaining claims, Count 1 is **DISMISSED without prejudice**. Count 2 shall proceed against Anthony Wills and Kevin Reichert. All claims against Anthony Jones, Lieutenant Walker, Sergeant Jackson, Lieutenant Dye, and Correctional Officer R. Gearhart are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Anthony Wills and Kevin Reichert: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Latham. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Latham, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Latham, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Latham is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  January 22, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**