IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEONTAE LATHAM, M53473, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 25-cv-93-DWD ) |
| C/O COLLINS, JOHN DOES 1-5, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Deontae Latham, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 2). Plaintiff alleges that the Defendants used excessive force against him in September of 2023. The present allegations were severed from a broader lawsuit on January 22, 2025. (Doc. 1). Plaintiff was invited to notify the Court of his desire to proceed with this case, and he timely indicated that he would like to proceed. (Doc. 4).

Plaintiff's Complaint (Doc. 2) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law

is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

The allegations severed into this case are contained on pages 41-52 of Plaintiff's Complaint. (Doc. 2). Specifically, Plaintiff alleges that on September 24, 2023, a non-party officer came to his cell around 3:25a.m. and directed him to cuff up. (Doc. 2 at 41). He complied but asked why he was being cuffed and was informed that he was being cuffed because he had exposed his genitals to a nurse. (Doc. 2 at 41-42). He was escorted to the North 2 segregation unit where he was greeted by Defendants Collins and John Does 1-5. (Doc. 2 at 42). John Doe 1 informed him that he was going to be beaten for exposing himself to the nurse, and John Doe 2 verbalized his willingness to stand lookout by the door. (Doc. 2 at 42).

Plaintiff alleges that John Doe 1 handcuffed him to the cage and John Does 1, 3, and Collins then began to taunt him and to threaten violence. The verbal taunts escalated and Collins punched Plaintiff twice in the face. John Doe 3 then grabbed Plaintiff's hair to hold his head up while he kicked his body. Plaintiff fell to the floor, although he was still cuffed to the wall. Plaintiff saw John Does 4 and 5 enter the cell at which point he closed his eyes and prayed. (Doc. 2 at 43). Plaintiff alleges while his eyes were closed he was battered with strikes to the back of his head, back, and legs. He claims the pain was so intense that he lost consciousness. He believes that he came to when John Doe 4 threw cold water on his face. (Doc. 2 at 44). The handcuffs were then removed from the cage

and secured behind his back.  The Defendants made triumphant remarks and each grabbed limbs of his body to carry him to a cell.  He alleges he was thrown on the floor of the cell and was uncuffed through a slot in the door.  (Doc. 2 at 44).

Plaintiff asked for medical treatment, but his requests were denied.  (Doc. 2 at 45). He alleges he spent at least a few days in the cell before being taken to the Adjustment Committee on allegations that he exposed himself to the nurse.  (Doc. 2 at 45).  He was ultimately acquitted after video footage demonstrated that he was not the one to expose himself.  He was removed from segregation a few days after his adjustment committee hearing, and the charges were expunged.  (Doc. 2 at 45).  He alleges that his eye was still swollen at that time, and that he required eight weeks of physical therapy for injuries from the beatings.  (Doc. 2 at 45-46).

Plaintiff alleges he fully grieved the incident, but that he has had trouble gaining access to copies of his grievances or other materials.  He claims the Warden has signed off on grievances about the excessive force incident and that signing a grievance can be sufficient to establish liability.  (Doc. 2 at 47).  He faults all Defendants for excessive force, seeks a permanent restraining order against them, and seeks monetary compensation. (Doc. 2 at 48-52).

Based on the allegations in the Complaint, the Court will adopt the designation of the claim that was identified at the time this case was severed, but it will renumber the claim for clarity:

> **Claim 1:** Eighth Amendment excessive force claim against Collins and John Does 105 for their use of force against Plaintiff in September of 2023;

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissal

Plaintiff briefly mentions Anthony Wills (the Warden) and Kevin Reichert (an assistant warden) for the proposition that they should be held liable because they were signatories on grievances about the allege excessive force, as well as his conditions of confinement (not at issue in this suit). Plaintiff is correct that in some circumstances a highly detailed grievance or other correspondence may be sufficient to invoke some duty to investigate by a signatory, but his allegations in the complaint against Wills or Reichert are too vague to meet this standard. He does not allege with any level of specificity what his grievances said, when they were submitted, in what context these individuals signed them (was it about emergency review or was it a final merits ruling?), or how many grievances or other forms of correspondence he submitted. His allegations in this respect are threadbare and rely on legal conclusions. Thus, any assertions against Wills or Reichert for personal responsibility related to grievance processing are dismissed as insufficiently pled.

## Analysis

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). A key component of a failure to intervene claim is an individual's opportunity to act. Prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent. *Gill v. Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). Plaintiff's allegations in Claim 1 are sufficient to proceed against all Defendants for their alleged roles in the physical assault and/or for their failure to intervene to stop the conduct of their peers.

There are five John Doe defendants, so the Court will direct the Clerk of Court to add the Warden of Menard to this lawsuit in his official capacity to assist with John Doe identification. Plaintiff must file a notice within 21 days giving as much descriptive information as possible about these individuals. A failure to file a timely notice may result in the dismissal of the claims against John Does 1-5.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant C/O Collins and John Does 1-5. The Clerk of Court is **DIRECTED** to **ADD** the Warden of Menard to this case to assist with John Doe identification.

Plaintiff **must file a Notice within 21 days** describing John Does 1-5 with as much detail as possible.  Failure to file this Notice may result in the dismissal of John Does 1-5.

The Clerk of Court is **DIRECTED** to prepare for Defendants Collins and the Warden of Menard (official capacity for John Doe identification): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 2), and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Given that Plaintiff has opted to proceed in this case, he must also pay the $405 filing fee or apply to proceed in forma pauperis. The Clerk of Court is **DIRECTED** to send him an IFP application. He must pay or apply for IFP within 30 days.

**IT IS SO ORDERED.**

Dated: March 5, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.